## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SUSAN GOLDFINE RAAB, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC. and STARWOOD HOTELS & RESORTS WORLDWIDE, LLC,<br><br>Defendants. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Susan Goldfine Raab by and through undersigned counsel, on behalf of herself and all others similarly situated, allege the following claims and causes of action against Defendants Marriott International, Inc. ("Marriott") and Starwood Hotels & Resorts Worldwide, LLC ("Starwood") (collectively, "Defendants"), based upon personal knowledge and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

### SUMMARY OF THE ACTION

1. Plaintiff brings this class action against Marriott and Starwood for their failure to secure and safeguard its guests' names, phone numbers, email addresses, passport numbers, dates of birth, credit card numbers and credit card expiration dates ("Personal Identifying Information").

2. Starwood collected Plaintiff and Class Members' Personal Identifying Information at the time guests registered on its website, checked-in to one of its hotels, enrolled in its loyalty program ("SPG Loyalty Program"), and used a dining or retail service within its property.

3.      Beginning in 2014 (or perhaps even earlier) and continuing through November 2018, cyber criminals exploited vulnerabilities in Marriott and Starwood's network and stole guests' Personal Identifying Information ("Data Breach").

4.      On November 30, 2018, Marriott disclosed that the massive Data Breach potentially exposed the personal data of 500 million guests. It is the second biggest corporate data breach in history. Despite the staggering magnitude of this breach, Marriott claimed it did not discover it until November 19, 2018. Cyber criminals have had four full years of unencumbered access to personal and confidential information of hundreds of millions of guests before Marriott even notified its guests.

5.      Marriott has publicly acknowledged that the Data Breach resulted, at least in part, from vulnerabilities in a database containing sensitive information it gleaned from guests at its Starwood-branded hotels, noting in an 8-K filed on November 30, 2018 that it was "devoting the resources necessary to phase out Starwood systems and accelerate the ongoing security enhancements to [its] network." The opportunities that any such faults created for cyber criminals were greatly enhanced by Marriott's systemic incompetence and uninterested approach to data security. Indeed, Marriott failed to employ sufficient security measures to avoid the Data Breach despite the fact that Starwood—which Marriott acquired in 2016 and whose database it admitted to have been compromised in the Data Breach—had reported a data breach relating to 54 of its hotels in November of 2015. Despite this data breach, as well as numerous other high-profile data breaches at other major American corporations (including Equifax and Target) during the four years between the initial breach and its discovery, Marriott took no steps to assure that its systems were secure.

6. On information and belief, Plaintiff and Class Members' Personal Identifying Information was improperly handled and stored, was unencrypted, and was not kept in accordance with applicable, required, and appropriate cyber-security protocols, policies, and procedures. As a result, Plaintiff and Class Members' Personal Identifying Information was compromised and stolen.

7. Plaintiff and Class Members have had their privacy rights violated and been exposed to increased risk of fraud and identify theft. Plaintiff and Class Members are further damaged as their Personal Identifying Information remains in Marriott's possession, without adequate protection, and is also in the hands of those who obtained it for its commercial value, without Plaintiff or Class Members' consent.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Defendants and is a citizen of a foreign state. Subject matter jurisdiction also arises under 28 U.S.C. § 1331 based on the claim asserted under the Federal Stored Communications Act, 18 U.S.C. § 2702. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper under 28 U.S.C. § 1391(b) and (c) because Defendants are corporations that do business in and are subject to personal jurisdiction in this District, and because a substantial part of the events or omissions giving rise to the claims in this action occurred in or emanated from this District.

## PARTIES

**Plaintiff**

10.     Plaintiff Susan Goldfine Raab is a resident of Highland Park, Illinois. Ms. Raab has repeatedly stayed at Starwood properties in the United States and abroad. She opened a Starwood Preferred Guest account on or about 2006. Ms. Raab provided her personal and confidential information to Starwood, including but not limited to her passport number, on the basis that they would keep her information secure, and employ reasonable and adequate security measures to ensure that hackers would not compromise her information, and notify her promptly in the event of a breach. During the time Starwood had possession of Ms. Raab's credit card number and expiration date there was instances of fraudulent activity on the card by unknown individuals. As a result of the Data Breach, Ms. Raab is taking measures that she otherwise would not have to ensure that her identify is not stolen and that her accounts are not compromised.

**Defendants**

11.     Marriott is a Delaware corporation with its principal place of business and headquarters in Bethesda, Maryland, located at 10400 Fernwood Road. Marriott is a worldwide operator, franchisor, and licensor of hotel, residential, and timeshare properties under numerous brand names at different price and service points. On September 23, 2016, Marriott completed the acquisition of Starwood through a series of transactions, after which Starwood became an indirect wholly-owned subsidiary of Marriott. Through Starwood, Marriott operates hotels and/or resorts as well as other timeshare properties under the following brands: Westin, Sheraton, Luxury Collection, Four Points by Sheraton, W Hotels, St. Regis, Le Méridien, Aloft, Element, Tribute Portfolio and Design Hotels.

12. Starwood was an American hotel and leisure company with a principal place of business and headquarters in Stamford, Connecticut and is an indirect wholly-owned subsidiary of Marriott. Marriott purchased Starwood for $13.6 billion in a merger that was finalized on September 23, 2016. Starwood hotels, resorts and timeshare properties operated by Marriott include the following brands: Westin, Sheraton, Luxury Collection, Four Points by Sheraton, W Hotels, St. Regis, Le Méridien, Aloft, Element, Tribute Portfolio and Design Hotels. According to Marriott's Form 8-K filed on November 30, 2018, the Data Breach affected Starwood's legacy customer-reservation database.

## FACTUAL ALLEGATIONS

13. Prior to its merger with Marriott, Starwood was one of the largest hotel and leisure companies in the world. It owned, operated, franchised and managed hotels, resorts, spas, residences and vacation ownership properties under its 11 owned brands: Westin Hotels; Sheraton Hotels and Resorts, The Luxury Collection, Four Points by Sheraton, W Hotels, St. Regis, Le Méridien, Aloft Hotels, Element by Westin, Tribute Portfolio, and Design Hotels.[1]

14. When booking reservations at a Marriott property, including its Starwood brand properties, customers provide Marriott with sensitive Personal Identifying Information, including their names, phone numbers, email addresses, passport numbers, dates of birth, credit card numbers and credit card expiration dates.

15. Furthermore, Starwood collected Personal Identifying Information through its heavily marketed SPG Loyalty Program which it promoted as an award-winning proprietary frequent traveler, customer loyalty, and multi-brand marketing program that encourages its

---

[1] Starwood. 2015 Form 10-K Annual Report, at 2.

5

members to concentrate their stays within Starwood's numerous brands and to try new hotels in the Starwood family, allowing members to earn and redeem points for room stays, room upgrades and airline flights, with no blackout dates. In 2015, SPG Loyalty Program members purchased approximately 50% of its room nights. [2]

16.     In November 2015, Marriott announced it would purchase Starwood for $13.6 billion dollars creating the world's largest hotel company.[3]

17.     At December 31, 2015, Starwood's hotel business included 1,282 owned, managed or franchised hotels with approximately 362,300 rooms, comprising 32 hotels that it owned or leased or in which it had a majority equity interest, 608 hotels managed by it on behalf of third-party owners (including entities in which we have a minority equity interest) and 642 hotels for which it receives franchise fees. Additionally, Starwood's vacation ownership and residential business included 15 stand-alone vacation ownership resorts and residential properties.[4]

18.     With the merger complete, Marriott ended 2017 with more than 6,500 properties in 30 hotel brands spanning 127 countries and territories.[5]

**Marriott Knew The Importance Of Data Security Prior To The Data Breach**

19.     Over the past decade, a series of high-profile data breaches at major American institutions has highlighted the extreme risks to consumers who share their personal data to

---

[2] *Id*. at 1.
[3] http://news.marriott.com/2015/11/marriott-international-to-acquire-starwood-hotels-resorts-worldwide-creating-the-worlds-largest-hotel-company/ (last accessed November 30, 2018)
[4] Starwood. 2015 Form 10-K Annual Report, at 2.
[5] Marriott International, Inc. 2017 Annual Report, https://marriott.gcs-web.com/static-files/b82978a6-9d28-4e38-9855-fc4ae2cebe11 (last accessed November 30, 2018)

conduct business with such corporations and the corresponding need for those corporations to safeguard personal data.

20.     Data breaches of the type at issue in this action present both immediate and ongoing risks to consumers. Cyber criminals may use or sell to others for use the type of information compromised by the Data Breach—including, but not limited to, names, phone numbers, email addresses, passport numbers, dates of birth, dates of check-in and departure, and credit card numbers and expiration dates—to, among other things, (i) gain access to individuals' electronic accounts, including social media and bank and credit card accounts, (ii) impersonate consumers in a manner detrimental to their finances or personal reputations, including by creating new accounts without authorization, and (iii) harass, blackmail or otherwise target individuals for fraud or other crimes. Once a breach occurs, consumers whose personal information is used to their detriment are required to undertake costly and time-consuming remedial measures including, among other things, disputing and potentially prosecuting claims regarding contested charges and taking steps to repair damage to credit ratings and other reputational harm. Such consumers also face risks of civil litigation initiated by creditors based on false charges to their accounts.

21.     Even if personal information is not used to consumers' detriment upon initially being compromised, consumers remain subject to ongoing risks, requiring them to take various remedial steps lest identity thieves use their Personal Identifying Information for nefarious purposes months, years or decades later. These remedial steps, which include, among other things, potentially cancelling accounts, monitoring activity on such accounts, changing passport numbers, and otherwise remaining vigilant for years or even decades to ascertain whether their information is being used to their detriment, are costly, time-consuming, mentally and emotionally harmful, and nerve-wracking to consumers.

7

22.     Marriott maintains electronic databases in which it stores Personal Identifying Information divulged by all guests who stay at Marriott properties, including the Starwood database, which contain information regarding guests who stayed at properties that Marriott has admitted were compromised in the Data Breach. Guests disclose this information to Marriott, among other reasons, for the purposes of making reservations at Marriott-controlled hotels. Guests who disclose this information reasonably expect that Marriott will hold it in confidence and protect it from being compromised.

23.     At the time of the Data Breach, Marriott, having observed numerous well publicized data breaches involving major corporations over the last decade plus, was well aware of the likelihood and repercussions of cybersecurity threats.

24.     Indeed, Starwood, which Marriott acquired in 2016 and whose system Marriott has identified as having been breached, announced in November of 2015 that databases at 54 of its hotels had been hacked, placing the post-acquisition Marriott on notice of significant security risks at Starwood.[6] The breach was announced in the very same week that Marriott announced its plan to acquire Starwood. Despite this red flag, Marriott failed to address the problem.

**Marriott Takes Four Years To Discover The Data Breach And Delays Informing Impacted Guests**

25.     According to Marriott's press release, it received an alert from an internal system on September 8, 2018 that there was an attempt to access the Starwood guest reservation database.[7]

---

[6] https://www.starwoodhotels.com/Media/PDF/Corporate/Press_Release.pdf (last accessed November 30, 2018)

[7] Marriott Announces Starwood Guest Reservation Database Security Incident, http://news.marriott.com/2018/11/marriott-announces-starwood-guest-reservation-database-security-incident/ (last accessed November 30, 2018)

26.    The investigation by Marriott began and it learned that since 2014 – *four years earlier* – unauthorized users had gained access to the Starwood network and been undetected in its system.[8] In fact, these unauthorized users had such access before, during and after the November 2015 data theft incident.

27.    Marriott's investigation further revealed that unauthorized users had copied and encrypted information, as well as attempted to remove it.[9]

28.    On November 19, 2018, Marriott decrypted the information and confirmed that the contents were from its Starwood guest reservation database.[10]

29.    Marriott has confirmed that approximately 500 million guests who made a reservation at a Starwood property since 2014 may have been impacted.  The database contains some combination of name, mailing address, phone number, email address, passport number, SPG Loyalty Program account information, date of birth, gender, arrival and departure information, reservation date, and communication preferences. For other guests, the information also includes payment card numbers and payment card expiration dates. Furthermore, other guests' accounts included a name and potentially a mailing address, email address, or other personal information.[11]

30.    According to Gus Hosein, executive director of Privacy International, "[Marriott] can say all they want that they take security seriously, but they don't if you can be hacked over a four-year period without noticing."[12]

_____

[8] *Id*.
[9] *Id*.
[10] *Id*.
[11] *Id*.
[12] Amie Tsang & Adam Stariano, "Marriott Breach Exposes Data of Up to 500 Million Guests," The New York Times, *available at* https://www.nytimes.com/2018/11/30/business/marriott-data-breach.html (last accessed November 30, 2018).

**Personal Identifying Information Is Valuable To Thieves**

31. Personal Identifying Information is frequently targeted and highly coveted by cyber criminals.

32. Richard Gold, head of security engineering at the cybersecurity firm Digital Shadows, said "hotels are an attractive target for hackers because they hold a lot of sensitive information, including credit card and passport details, but often don't have security standards as tough as those of more regulated industries, like banking."[13]

33. Mr. Gold thought the Marriott breach was "among the largest of consumer data, on par with breaches at Yahoo and the credit-storing giant, Equifax."[14]

34. Despite publicly available knowledge from frequent public announcements of data breaches, Marriott recklessly maintained an insufficient and inadequate system to protect the Personal Identifying Information of Plaintiff and Class Members from cyber criminals.

**Marriott Failed To Segregate Payment Card Data From Personal Identifying Information**

35. The Payment Card Industry Data Security Standard ("PCI DSS") is a set of requirements designed to ensure that companies maintain consumer credit and debit card information in a secure environment.

36. According to the PCI Security Standards Council, "PCI DSS provides a baseline of technical and operational requirements designed to protect cardholder data."[15]

37. One PCI DSS requirement is to protect stored cardholder data. Cardholder data includes Primary Account Number, Cardholder Name, Expiration Date, and Service Code.

---

[13] *Id.*
[14] *Id.*
[15] PCI SECURITY STANDARDS COUNCIL, PAYMENT CARD INDUSTRY DATA SECURITY STANDARD VERSION 2.0 at 5 (October 2010) (hereafter PCI Version 2).

"Network segmentation of, or isolating (segmenting), the cardholder data environment from the remainder of an entity's network is not a PCI DSS requirement."[16] However, segregation is recommended because, among other reasons, "[i]t's not just cardholder data that's important; criminals are also after personally identifiable information (PII) and corporate data."[17]

38.     Marriott has failed to provide a clear understanding of how the Data Breach occurred and its full effects on consumers payment card data. Without such detailed disclosure, Plaintiff and Class Members are unable to take the necessary precautions to prevent continued misuse of their personal information.

39.     The Data Breach was caused and enabled by Marriott's knowing violation of its obligations to abide by industry standards in protecting its customers' payment card data.

**This Data Breach Will Result In Additional Identify Theft And Identify Fraud**

40.     The harm from Marriott's failure to keep Plaintiff and Class Members' data secure will be severe.

41.     The Federal Trade Commission ("FTC") estimates that as many as 10 million Americans have their identities stolen each year. As the FTC recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."[18]

---

[16] *Id.*

[17] Verizon 2014 PCI Compliance Report, available at http://www.nocash.info.ro/wpcontent/ uploads/2014/02/ Verizon_pci-report-2014.pdf (hereafter "2014 Verizon Report"), at 54

[18] Warning Signs of Identity Theft, *available at* *https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft* (last accessed November 30, 2018).

42.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, whether such charges are ultimately reimbursed by the credit card companies.

**Marriott's Response To The Data Breach Is Insufficient**

43.     The untimely and inadequate notification of the Data Breach further has damaged Plaintiff and Class Members. Marriott should have timely disclosed to Plaintiff and Class Members that their Personal Identifying Information was compromised. A timely disclosure would have allowed Plaintiff and Class Members to take appropriate measures to monitor and protect their accounts.

44.      In addition, Marriott's offer of one year of free enrollment in Web Watcher is inadequate. Data thieves will be aware of the one-year expiration period offered to guests and can simply wait out the time as is the typical *modus operandi* of such cyber criminals.

**Plaintiff And Class Members Suffered Damages**

45.     The Data Breach was a direct and proximate result of Marriott's failure to properly protect Plaintiff and Class Members' Personal Identifying Information from unauthorized access, use, and disclosure, as required by various state and federal regulations, and industry practices. It was further the result of Marriott's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff and Class Members' Personal Identifying Information.

46.     Marriott did not obtain Plaintiff and Class Members' consent to disclose their Personal Identifying Information to any other person as required by applicable law and industry standards.

47.     As a direct and proximate result of Marriott's wrongful action and inaction and the resulting Data Breach, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the Data Breach on their lives including, *inter alia*, by placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, changing passport numbers, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity.

48.     Marriott's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiff and Class Members' Personal Identifying Information, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.     theft of their personal and financial information;

b.     the imminent and certainly impending injury flowing from potential fraud and identify theft posed by their passport, credit/debit card, and personal and confidential information being placed in the hands of criminals;

c.     the untimely and inadequate notification of the Data Breach;

d.     the improper disclosure of their Personal Identifying Information;

e.     loss of privacy;

f.     ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach;

g.     ascertainable losses in the form of deprivation of the value of their Personal Identifying Information for which there is a well-established national and international market;

h.     overpayments to Marriott for products and services purchased during the Data Breach in that a portion of the price paid for such products and services by Plaintiff and Class Members to Marriott was for the costs of reasonable and adequate safeguards and security measures that would protect customers' Personal Identifying Information, which Marriott did not implement and, as a result, Plaintiff and Class Members did not receive what they paid for and were overcharged by Marriott;

i.     the loss of use of and access to their account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts; and

j.     deprivation of rights they possess under the various state statutes.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff seeks relief in her individual capacity and as representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2), (b)(3), and (c)(4), Plaintiff seeks certification of the following nationwide class (the "Class" or "Nationwide Class"): all persons residing in the United States whose Personal Identifying Information was accessed, compromised, or stolen from Marriott or Starwood in the Data Breach.

50.     Plaintiff also seeks certification of state-by-state claims pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) in the alternative to the nationwide claims, as well as statutory claims under state data breach statutes and consumer protection statutes, on behalf of separate

statewide subclasses for each State, the District of Columbia, Puerto Rico, and the Virgin Islands (the "Statewide Subclasses" or the "Subclasses") as follows: all persons in each of the following States or Territories whose Personal Identifying Information was accessed, compromised, or stolen from Marriott or Starwood in the Data Breach:

> Alabama; Alaska; Arizona; Arkansas; California; Colorado; Connecticut; Delaware; District of Columbia; Florida; Georgia; Hawaii; Idaho; Illinois; Indiana; Iowa; Kansas; Kentucky; Louisiana; Maine; Maryland; Massachusetts; Michigan; Minnesota; Missouri; Montana; Nebraska; Nevada; New Hampshire; New Jersey; New Mexico; New York; North Carolina; North Dakota; Ohio; Oklahoma; Oregon; Pennsylvania; Puerto Rico; Rhode Island; South Carolina; South Dakota; Tennessee; Texas; Utah; Vermont; Virginia; Virgin Islands; Washington; West Virginia; Wisconsin; Wyoming.

51.     Plaintiff reserves the right to revise the definitions of the Nationwide Class and/or Statewide Subclasses based upon information learned through discovery.

52.     Excluded from each of the Nationwide Class and each State Subclass are Marriott and Starwood, including any entity in which Marriott or Starwood has a controlling interest, is a parent or subsidiary, or which is controlled by Marriott or Starwood, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Marriott and Starwood. Also excluded are the judges and court personnel in this case and any members of their immediate families.

53.     **Numerosity. Fed. R. Civ. P. 23(a)(1)**. The members of the Class are so numerous that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiff at this time, Marriott has acknowledged that information of over 500 million customers may have been compromised.

54.     **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3)**. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

15

a.    whether Marriott violated the various state Deceptive and Unfair Trade Practices Act by failing to implement reasonable security procedures and practices;

b.    whether Marriott violated laws by failing to promptly notify Class Members their personal information had been compromised;

c.    whether Class Members may obtain injunctive relief against Marriott under privacy laws to require that it safeguard or destroy, rather than retain, the Personal Identifying Information of Plaintiff and Class Members;

d.    which security procedures and which data-breach notification procedure should Marriott be required to implement as part of any injunctive relief ordered by the Court;

e.    whether Marriott has an implied contractual obligation to use reasonable security measures;

f.    whether Marriott has complied with any implied contractual obligation to use reasonable security measures;

g.    what security measures, if any, must be implemented by Marriott to comply with its implied contractual obligations;

h.    whether Marriott violated state privacy laws in connection with the actions described herein; and

i.    what the nature of the relief should be, including equitable relief, to which Plaintiff and the Class Members are entitled.

55.    All members of the proposed Class are readily ascertainable. Marriott has access to addresses and other contact information for millions of members of the Class, which can be used for providing notice.

56. **Typicality. Fed. R. Civ. P. 23(a)(3)**. Plaintiff's claims are typical of those of other Class members because Plaintiff's personal and confidential information, like that of every other Class Member, was accessed, compromised, or stolen from Marriott's system.

57. **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4)**. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including privacy litigation.

58. **Superiority of Class Action. Fed. R. Civ. P. 23(b)(3)**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no inordinate difficulty in the management of this action as a class action.

59. Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Marriott's violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

60. Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Marriott has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Nationwide Class)

61. Plaintiff incorporates the substantive allegations contained in paragraphs 1 through 60 as if fully set forth herein.

62. Marriott and Starwood solicited and invited Plaintiff and Class Members to include significant Personal Identifying Information when using its reservation system, including making it mandatory for inclusion in its SPG Loyalty Program. As such, Plaintiff and Class Members share personal and confidential information including names, phone numbers, email addresses, passport numbers, dates of birth, credit card numbers and credit card expiration dates.

63. Marriott and Starwood then invited Plaintiff and Class Members to continually use its SPG Loyalty Program to book rooms, and earn and redeem rewards. Plaintiff and Class Members accepted certain offers made by Starwood in connection with use of the SPG Loyalty Program, continuing to allow Starwood and Marriott to store, maintain, and safeguard their personal and confidential information.

64. When Plaintiff and Class Members provided their Personal Identifying Information to make a reservation with Starwood or in connection with joining the SPG Loyalty Program, they entered into implied contracts with the Starwood, pursuant to which Starwood and later Marriott agreed to safeguard their information, and to timely and accurately notify Plaintiff and Class Members if their data had been breached or compromised.

65. Plaintiff and Class Members would not have provided and entrusted their Personal Identifying Information to Starwood and Marriott in connection with making reservations or joining the SPG Loyalty Program in the absence of the implied contract between them.

66. Plaintiff and Class Members fully performed their obligations under the implied contracts with Marriott and Starwood.

67.     Marriott and Starwood breached the implied contracts it made with Plaintiff and Class Members by failing to safeguard and protect the Personal Identifying Information of Plaintiff and Class Members and by failing to provide timely and accurate notice to them that their information was compromised in and as a result of the Data Breach.

68.     As a direct and proximate result of Marriott and Starwood's breaches of the implied contracts with Plaintiff and Class Members, Plaintiff and Class Members sustained actual losses and damages as described in detail herein.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Nationwide Class)**

69.     Plaintiff incorporates the substantive allegations contained in paragraphs 1 through 68 as if fully set forth herein.

70.     Upon accepting and storing Plaintiff and Class Members' personal and confidential information in its respective computer database systems, Marriott undertook and owed a duty to Plaintiff and Class Members to exercise reasonable care to secure and safeguard that information and to utilize commercially reasonable methods to do so. Marriott knew, acknowledged, and agreed the information was private and confidential and would be protected as private and confidential.

71.     The law imposes an affirmative duty on Marriott to timely disclose the unauthorized access and theft of personal and confidential information to Plaintiff and the Class so Plaintiff and Class Members could take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their information.

72.     Marriott breached its duty to notify Plaintiff and Class Members of the unauthorized access by failing to notify Plaintiff and Class Members of the Data Breach until

November 30, 2018. To date, although it has been months since the breach was discovered, and four years since the breach commenced, Marriott has not provided sufficient information to Plaintiff and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiff and the Class.

73.     Marriott also breached its duty to Plaintiff and the Class Members to adequately protect and safeguard this information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to Plaintiff and Class Members' Personal Identifying Information. Furthering its dilatory practices, Marriott failed to provide adequate oversight of the Personal Identifying Information to which it was entrusted, resulting in a massive breach of the personal and confidential information of potentially 500 million guests, undetected over a period of four years.

74.     Through Marriott's acts and omissions described in this Complaint, including Marriott's failure to provide adequate security and its failure to protect Plaintiff and Class Members' personal and confidential information from being foreseeably captured, accessed, disseminated, stolen, and misused, Marriott unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiff and Class Members' information during the time it was within Marriott's possession or control.

75.     Further, through Marriott's failure to provide timely and clear notification of the Data Breach to consumers, Marriott prevented Plaintiff and Class Members from taking meaningful, proactive steps to secure their financial data and bank accounts.

76.     Upon information and belief, Marriott improperly and inadequately safeguarded the personal and confidential information of Plaintiff and Class Members by failing to implement standard industry rules, regulations, and best practices at the time of the Data Breach.

20

77.     Marriott's failure to take proper security measures to protect Plaintiff and Class Members' sensitive personal and confidential information violated its duty to protect that data and prevent its dissemination to third parties.

78.     Marriott had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices. By collecting and maintaining personal and confidential information of the Plaintiff and Class Members, and acknowledging that this information needed to be kept secure, it was foreseeable that they would be harmed in the future if Marriott did not protect Plaintiff and Class Members' information from cyber criminals.

79.     Marriott's duty also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect personal and confidential information. Various FTC publications and data security breach orders further form the basis of Marriott's duty. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

80.     Marriott's acknowledged the importance of keeping this information secure, and stated that they sought 'to use reasonable organizational, technical and administrative measures to protect Personal Data."[19] Despite acknowledging their responsibility to keep this information secure, Marriott improperly put the burden on Plaintiff and Class Members to notify Marriott if they suspected that their information was not secure, when individuals would not have access to

---

[19] *See* Privacy Center, Marriott Group Global Privacy Statement, https://www.marriott.com/about/privacy.mi (last accessed Nov. 30, 2018).

this information, and Defendant was in a superior position to know this information, and were in the exclusive possession of such information.[20]

81.     Marriott's failure to take proper security measures to protect Plaintiff and Class Members' sensitive Personal Identifying Information has caused Plaintiff and Class Members to suffer injury and damages. As a direct and proximate result of Marriott's negligence, Plaintiff and members of the Class and Subclasses have been (and continue to be) injured and have suffered (and will continue to suffer) the damages described above.

### THIRD CAUSE OF ACTION
### BREACH OF STATE DATA PRIVACY AND NOTICE STATUTES
### (On Behalf of the Statewide Subclasses)

82.     Plaintiff incorporates the substantive allegations contained in paragraphs 1 through 81 as if fully set forth herein.

83.     According to state laws in the following states and/or territories in which Marriott does business and/or in which Plaintiff and/or members of the Statewide Subclasses reside, Marriott had a duty to implement and maintain reasonable security procedures and/or to timely inform Plaintiff and the Statewide Subclass members of data breaches related to their Personal Identifying Information:

        a.     Alabama: 2018 S.B. 318, Act No. 396 (the "Alabama Data Breach Notification Act")

        b.     Alaska: Alaska Stat. §§ 45.48.010, *et seq.*; 45.50.471, *et seq.* (the "Personal Information Protection Act")

        c.     Arizona: Ariz. Rev. Stat. § 18-545, *et seq.*

---

[20] *Id.*

d.      Arkansas: Ark. Code § 4-110-101, *et seq.* (the "Personal Information Protection Act")

e.      California: Cal. Civ. Code § 1798.80, *et seq.* (the "California Customer Records Act")

f.      Colorado: Colo. Rev. Stat. §§ 6-1-713, *et seq.*; 6-1-716, *et seq.* (the "Colorado Security Breach Notification Act")

g.      Connecticut: Conn. Gen. Stat. §§ 42-471; 36a-701b

h.      Delaware: 6 Del. Code Ann. §§ 12B-101, *et seq.* (the "Delaware Computer Security Breach Act")

i.      District of Columbia: D.C. Code §§ 28-3851, *et seq.* (the "District of Columbia Consumer Security Breach Notification Act")

j.      Florida: Fla. Stat. § 501.171

k.      Georgia: O.C.G.A. §§ 10-1-910, *et seq.* (the "Georgia Security Breach Notification Act")

l.      Hawaii: Haw. Rev. Stat. §§ 487N-1, *et seq.* (the "Hawaii Security Breach Notification Act")

m.      Idaho: Idaho Stat. §§ 28-51-104-107

n.      Illinois: 815 Ill. Comp. Stat. §§ 530/1, *et seq.* (the "Illinois Personal Information Protection Act")

o.      Indiana: Ind. Code § 24-4.9-1-1, *et seq.*

p.      Iowa: Iowa Code § 715C.1, *et seq.* (the "Personal Information Security Breach Protection Law")

q.      Kansas: Kan. Stat. Ann. §§ 50-6,139b; 50-7a01, *et seq.*

r.      Kentucky: Ky. Rev. Stat. Ann. §§ 365.732, *et seq.* (the "Kentucky Computer Security Breach Notification Act")

s.      Louisiana: La. Rev. Stat. § 51:3071, *et seq.* (the "Database Security Breach Notification Law")

t.      Maine: Me. Rev. Stat. tit. 10 § 1346 *et seq.* (the "Notice of Risk to Personal Data Act")

u.      Maryland: Md. Comm. Code §§ 14-3501, *et seq.* (the "Maryland Personal Information Protection Act")

v.      Massachusetts: Mass. Gen. Laws § 93H-1 *et seq.*

w.      Michigan: Mich. Comp. Laws Ann. §§ 445.72, *et seq.* (the "Michigan Identity Theft Protection Act")

x.      Minnesota: Minn. Stat. §§ 325E.61, 325E.64

y.      Mississippi: Miss. Code § 75-24-29

z.      Missouri: Mo. Rev. Stat. § 407.1500

aa.     Montana: Mont. Code Ann. §§ 2-6-1501-1503; 30-14-1704(1), *et seq.*; 33-19-321; (the "Computer Security Breach Law")

bb.     Nebraska: Neb.Rev.St. § 87-801, *et seq.* ("Financial Data Protection and Consumer Notification of Data Security Breach Act of 2006")

cc.     Nevada: Nev. Rev. Stat. §§ 603A.010 *et seq.*, 242.183

dd.     New Hampshire: N.H. Rev. Stat. Ann. §§ 359-C:19, *et seq.*

ee.     New Jersey: N.J. Stat. Ann. §§ 56:8-161, *et seq.* (the "New Jersey Customer Security Breach Disclosure Act")

ff.     New Mexico: 2017 H.B. 15, Chap. 36 (the " Data Breach Notification Act")

gg.     New York: N.Y. Gen. Bus. Law § 899-aa (the "Information Security Breach and Notification Act")

hh.     North Carolina: N.C. Gen. Stat. § 75-60, *et seq.* (the "North Carolina Identity Theft Protection Act")

ii.     North Dakota: N.D. Cent. Code §§ 51-30-01, *et seq.*

jj.     Ohio: Ohio Rev. Code §§ 1349.19, *et seq.*

kk.     Oklahoma: Okla. Stat. Ann. §§ 24-161-166 (the "Security Breach Notification Act")

ll.     Oregon: Or. Rev. Stat. §§ 646A.600, *et seq.* (the "Oregon Consumer Identity Theft Protection Act")

mm.     Pennsylvania: 73 Pa. Stat. §§ 2301, *et seq.* (the "Breach of Personal Information Notification Act")

nn.     Puerto Rico: P.R. Laws Ann. tit. 10, §§ 4051, *et seq.* (the "Citizen Information on Data Banks Security Act")

oo.     Rhode Island: R.I. Gen. Laws §§ 11-49.3-1, *et seq.* (the "Rhode Island Identify Theft Protection Act of 2015")

pp.     South Carolina: S.C. Code Ann. §§ 39-1-90, *et seq.* (the "South Carolina Data Breach Security Act")

qq.     South Dakota: S.D. Cod. Laws §§ 20-40-20, *et seq.*

rr.     Tennessee: Tenn. Code Ann. §§ 47-18-2107, *et seq.* (the "Tennessee Personal Consumer Information Release Act")

ss.     Texas: Tex. Bus. & Com. Code § 521.001, *et seq.* (the "Identity Theft Enforcement and Protection Act")

tt. Utah: Utah Code §§ 13-44-101, *et seq.* (the "Protection of Personal Information Act")

uu. Vermont: Vt. Stat. tit. 9 §§ 2430, 2435, *et seq.* (the "Security Breach Notice Act")

vv. Virginia: Va. Code. Ann. §§ 18.2-186.6, *et seq.* (the "Virginia Personal Information Breach Notification Act")

ww. Virgin Islands: V.I. Code tit. 14 §§ 2208, *et seq.* (the "Identity Theft Prevention Act")

xx. Washington: Wash. Rev. Code §§ 19.255.010, *et seq.* (the "Washington Data Breach Notice Act")

yy. West Virginia: W.V. Code §§ 46A-2A-101 *et seq.*

zz. Wisconsin: Wis. Stat. §§ 134.98, *et seq.*

aaa. Wyoming: Wyo. Stat. Ann. §§ 40-12-501, *et seq.*

84. Marriott failed to satisfy its obligations under the foregoing state statutes concerning data breach notification and data privacy restrictions.

85. Timely notification was required, and was appropriate and necessary so that, among other things, Plaintiff and members of the Class and Subclasses could take appropriate measures to freeze or lock their credit profiles, avoid unauthorized charges to their credit or debit card accounts, cancel or change usernames and passwords on compromised accounts, monitor their account information and credit reports for fraudulent activity, contact their banks or other financial institutions that issue their credit or debit cards, obtain credit monitoring services, change passport numbers, and take other steps to mitigate or ameliorate the damages caused by Marriott's misconduct.

26

86. Marriott breached the duties it owed to Plaintiff and the members of the Class and Subclasses described above. Marriott breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the Personal Identifying Information of Plaintiff and the members of the Class and Subclasses; (b) detect the breach while it was ongoing; (c) maintain security systems consistent with industry standards; and (d) timely disclose that Plaintiff and the members of the Class and Subclasses' Personal Identifying Information in Marriott's possession had been or was reasonably believed to have been, stolen or compromised.

87. But for Marriott's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class and Subclasses, their Personal Identifying Information would not have been compromised.

88. As a direct and proximate result of Marriott's negligence, Plaintiff and members of the Class and Subclasses have been (and continue to be) injured and have suffered (and will continue to suffer) the damages described above.

**FOURTH CAUSE OF ACTION**
**BREACH OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of the Statewide Subclasses)**

89. Plaintiff incorporates the substantive allegations contained in paragraphs 1 through 88 as if fully set forth herein.

90. According to state laws in the following states and/or territories in which Marriott does business and/or in which Plaintiff and/or Class Members reside, Marriott had a duty to refrain from engaging in unfair, fraudulent or deceptive trade practices:

    a. Alabama: Ala. Code §§ 8-19-1, *et seq.* (the "Alabama Deceptive Trade Practice Act")

27

b.      Alaska: Alaska Stat. §§ 45.50.471, *et seq.* (the "Alaska Consumer Protection Act")

c.      Arizona: Ariz. Rev. Stat. §§ 44-1521, *et seq.* (the "Arizona Consumer Fraud Act")

d.      Arkansas: Ark. Code §§ 4-88-107, *et seq.* (the "Arkansas Deceptive Trade Practices Act")

e.      California: Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "California Unfair Competition Law"); Cal. Civ. Code §§ 1750, *et seq.* (the "California Consumer Legal Remedies Act")

f.      Colorado: Colo. Rev. Stat. §§ 6-1-101, *et seq.* (the "Colorado Consumer Protection Act")

g.      Connecticut: Conn. Gen. St. § 42-110a *et seq.* (the "Connecticut Unfair Trade Practices Act")

h.      Delaware: 6 Del. Code § 12-B-102(d), 6 Del. Code § 25 (the "Delaware Consumer Fraud Act")

i.      District of Columbia: D.C. Code §§ 28-3904, *et seq.* (the "District of Columbia Consumer Protection Procedures Act")

j.      Florida: Fla. Stat. §§ 501.201, *et seq.* (the "Florida Deceptive and Unfair Trade Practices Act")

k.      Georgia: Ga. Code §§ 10-1-370, *et seq.* (the "Georgia Uniform Deceptive Trade Practices Act")

l.      Hawaii: Haw. Rev. Stat. §§ 480-1, *et seq.* (the "Hawaii Unfair Practices and

Unfair Competition Act"); Haw. Rev. Stat. §§ 481A-3, *et seq.* (the "Hawaii Uniform Deceptive Trade Practice Act")

m.      Idaho: Idaho Code §§ 48-601, *et seq.* (the "Idaho Consumer Protection Act")

n.      Illinois: 815 Ill. Comp. Stat. §§ 505, *et seq.* (the "Illinois Consumer Fraud and Deceptive Business Practices Act"); 815 Ill. Comp. Stat. §§ 510/2, *et seq.* (the "Illinois Uniform Deceptive Trade Practices Act")

o.      Indiana: Ind. Code §§ 24-5-0.5-1, *et seq.* (the "Indiana Deceptive Consumer Sales Act")

p.      Iowa: Iowa Code § 714H (the "Iowa Private Right of Action for Consumer Frauds Act")

q.      Kansas: Kan. Stat. §§ 50-623, *et seq.* (the "Kansas Consumer Protection Act")

r.      Kentucky: Ky. Rev. Stat. §§ 367.110, *et seq.* (the "Kentucky Consumer Protection Act")

s.      Louisiana: La. Rev. Stat. §§ 51:1401, *et seq.* (the "Louisiana Unfair Trade Practices and Consumer Protection Law")

t.      Maine: 5 Me. Rev. Stat. §§ 205, 213, *et seq.* (the "Maine Unfair Trade Practices Act"); 10 Me. Rev. Stat. §§ 1212, *et seq.* (the "Maine Uniform Deceptive Trade Practices Act")

u.      Maryland: Md. Code Com. Law §§ 13-301, *et seq.* (the "Maryland Consumer Protection Act")

v.      Massachusetts: Mass. Gen. Laws ch. 93A, §§ 1, *et seq.* (the "Massachusetts

Consumer Protection Act")

w.      Michigan: Mich. Comp. Laws §§ 445.903, *et seq.* (the "Michigan Consumer Protection Act")

x.      Minnesota: Minn. Stat. §§ 325F.68, *et seq.* and Minn. Stat. §§ 8.31, *et seq.* (the "Minnesota Consumer Fraud Act"); Minn. Stat. §§ 325D.43, *et seq.* (the Minnesota Uniform Deceptive Trade Practices Act");

y.      Mississippi: Miss. Code §§ 75-24-1, *et seq.* (the "Mississippi Consumer Protection Act")

z.      Missouri: Mo. Rev. Stat. §§ 407.010, *et seq.* (the "Missouri Merchandise Practices Act")

aa.     Montana: Mont. Code §§ 30-14-101, *et seq.* (the "Montana Unfair Trade Practices and Consumer Protection Act")

bb.     Nebraska: Neb. Rev. Stat. §§ 59-1601, *et seq.* (the "Nebraska Consumer Protection Act"); Neb. Rev. Stat. §§ 87-301, *et seq.* (the "Nebraska Uniform Deceptive Trade Practices Act")

cc.     Nevada: Nev. Rev. Stat. §§ 598.0903, *et seq.* (the "Nevada Deceptive Trade Practices Act")

dd.     New Hampshire: N.H. Rev. Stat. §§ 358-A, *et seq.* (the "New Hampshire Consumer Protection Act")

ee.     New Jersey: N.J. Rev. Stat. §§ 56:8-1, *et seq.* (the "New Jersey Consumer Fraud Act")

ff.     New Mexico: N.M. Stat. §§ 57-12-2, *et seq.* (the "New Mexico Unfair Practices Act")

gg.     New York: N.Y. Gen. Bus. Law §§ 349, *et seq.* (the "New York General Business Law")

hh.     North Carolina: N.C. Gen. Stat. §§ 75-1.1, *et seq.* (the "North Carolina Unfair Trade Practices Act")

ii.     North Dakota: N.D. Cent. Code §§ 51-15-01, *et seq.* (the "North Dakota Unlawful Sales or Advertising Act")

jj.     Ohio: Ohio Rev. Code §§ 4165.01, *et seq.* (the "Ohio Deceptive Trade Practices Act")

kk.     Oklahoma: Okla. Stat. tit. 15, §§ 751, *et seq.* (the "Oklahoma Consumer Protection Act")

ll.     Oregon: Or. Rev. Stat. §§ 646.608, *et seq.* (the "Oregon Unlawful Trade Practices Act")

mm.     Pennsylvania: 73 Pa. Cons. Stat. §§ 201-2 & 201-3, *et seq.* (the "Pennsylvania Unfair Trade Practices and Consumer Protection Law")

nn.     Puerto Rico: 10 P.R. Laws §§ 257, *et seq.* (the "Puerto Rico Fair Competition Law")

oo.     Rhode Island: R.I. Gen. Laws §§ 6-13.1, *et seq.* (the "Rhode Island Deceptive Trade Practices Act")

pp.     South Carolina: S.C. Code §§ 39-5-10, *et seq.* (the "South Carolina Unfair Trade Practices Act")

qq.     South Dakota: S.D. Codified Laws §§ 37-24-1, *et seq.* (the "South Dakota Deceptive Trade Practices and Consumer Protection Law")

rr.     Tennessee: Tenn. Code §§ 47-18-101, *et seq.* (the "Tennessee Consumer Protection Act")

ss.     Texas: Texas Bus. & Com. Code §§ 17.41, *et seq.* (the "Deceptive Trade Practices—Consumer Protection Act")

tt.     Utah: Utah Code §§ 13-11-1, *et seq.* (the "Utah Consumer Sales Practices Act")

uu.     Vermont: Vt. Stat. Ann. Tit. 9, §§ 2451, *et seq.* (the "Vermont Consumer Fraud Act")

vv.     Virginia: Va. Code §§ 59.1-196, *et seq.* (the "Virginia Consumer Protection Act")

ww.     Virgin Islands: V.I. Code tit. 12A, §§ 301, *et seq.* (the "Virgin Islands Consumer Fraud and Deceptive Business Practices Act"); V.I. Code tit. 12A, §§101, *et seq.* (the "Virgin Islands Consumer Protection Law")

xx.     Washington: Wash. Rev. Code §§ 19.86.020, *et seq.* (the "Washington Consumer Protection Act")

yy.     West Virginia: W. Va. Code §§46A-6-101, *et seq.* (the "West Virginia Consumer Credit and Protection Act")

zz.     Wisconsin: Wis. Stat. § 100.18 (the "Wisconsin Deceptive Trade Practices Act")

aaa.     Wyoming: Wyo. Stat. § 40-12-101, *et seq.* (the "Wyoming Consumer Protection Act"))

91.     Marriott failed to satisfy its obligations under the foregoing state statutes concerning unfair and deceptive trade practices and consumer protection restrictions.

92.     Marriott engaged in unfair and deceptive trade practices in connection with offering for sale or selling consumer goods or services, in violation of the foregoing statutes, including:

a.     failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and the Statewide Class members' Personal Identifying Information, which was a direct and proximate cause of the Data Breach;

b.     failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Marriott Data Breach;

c.     failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and the Statewide Class Members' Personal Identifying Information, including duties imposed by the FTCA, 15 U.S.C. § 45, which was a direct and proximate cause of the Marriott Data Breach;

d.     misrepresenting that it would protect the privacy and confidentiality of Plaintiff and the Statewide Class Members' Personal Identifying Information, including by implementing and maintaining reasonable security measures;

e.     misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and the Statewide Class Members' Personal Identifying Information, including duties imposed by the FTCA, 15 U.S.C. § 45;

f.     omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and the Statewide Class Members' Personal Identifying Information; and

g.      omitting, suppressing, and concealing the material fact that it did not

comply with common law and statutory duties pertaining to the security and privacy

of Plaintiff and Statewide Class Members' Personal Identifying Information,

including duties imposed by the FTCA, 15 U.S.C. § 45 and the foregoing state

consumer protection statutes.

93.     Marriott's representations and omissions were material because they were likely to

deceive reasonable consumers about the adequacy of Marriott's data security and ability to protect

the confidentiality of consumers' Personal Identifying Information. Marriott's misrepresentations

and omissions would have been important to a significant number of consumers in making

financial decisions.

94.     Had Marriott disclosed to Plaintiff and the members of the Statewide Classes that

its data systems were not secure and, thus, vulnerable to attack, Marriott's business would have

suffered and it would have been forced to adopt reasonable data security measures and comply

with the law.

95.     Marriott violated the foregoing state consumer protection statutes, and recklessly

disregarded Plaintiff and the members of the Statewide Classes' rights. Starwood's previous

breach put it on notice or, at the very least, inquiry notice that its security and privacy protections

were inadequate.

96.     As a direct and proximate result of Marriott's unfair and deceptive acts and

practices, Plaintiff and the members of the Statewide Classes have suffered and will continue to

suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages,

including from fraud and identity theft; time and expenses related to monitoring their financial

accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their Personal Identifying Information.

97.     As a direct and proximate result of Marriott's negligence, Plaintiff and members of the Class and Subclasses have been (and continue to be) injured and have suffered (and will continue to suffer) the damages described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Certifying this class action, appointing Plaintiff as Class representative, and appointing her Counsel as Class Counsel;

B.     Entering judgment in favor of Plaintiff and the other members of the Class and Subclasses, and against Marriott under the legal theories alleged herein;

C.     That Marriott's wrongful conduct alleged herein be adjudged and decreed to violate the Data Protection Statutes as asserted and that the Court issue an order enjoining the methods, acts, or practices adjudged and decreed unlawful;

D.     That Marriott's wrongful conduct alleged herein be adjudged and decreed to violate the Deceptive Trade Practice Statutes as asserted and that the Court issue an order enjoining the methods, acts, or practices adjudged and decreed unlawful;

E.     Awarding actual and compensatory damages in favor of Plaintiff and the members of the Class and Subclasses, as provided by law, in an amount to be determined;

F.     Awarding Plaintiff and members of the Class and Subclasses their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees, as provided by law;

G.     Such other relief as this court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  December 5, 2018                    **FREED KANNER LONDON & MILLEN LLC**

                                            _/s/ Michael J. Freed_
                                            Michael J. Freed
                                            Steven A. Kanner
                                            Douglas A. Millen
                                            Brian M. Hogan
                                            2201 Waukegan Road, Suite 130
                                            Bannockburn, IL 60015
                                            Telephone: (224) 632-4500
                                            Facsimile:  (224) 632-4521
                                            mfreed@fklmlaw.com
                                            skanner@fklmlaw.com
                                            dmillen@fklmlaw.com
                                            bhogan@fklmlaw.com

                                            _Attorneys for Plaintiff_